The PEOPLE of the State of Colorado,
Plaintiff-Appellee,

v.

David R. QUINTANA,
Defendant-Appellant.

No. 84SA180.

Supreme Court of Colorado,
En Banc.

Oct. 15, 1985.

Rehearing Denied Nov. 4, 1985.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Virginia Byrnes, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, State Public Defender, Martin J. Gerra, III, Deputy State Public Defender, Denver, for defendant-appellant.

NEIGHBORS, Justice.

The defendant, David R. Quintana, appeals his conviction for possession of weapons by a previous offender under section 18–12–108, 8 C.R.S. (1978). The district court ruled that an earlier conviction based on an invalid plea of guilty could serve as the predicate felony for the present offense. We reverse the judgment of the district court.

## I.

On February 27, 1982, the defendant was driving a car that was involved in a traffic accident. Police officers who arrived at the scene observed a handgun tucked into the front of Quintana's pants. Another gun and ammunition were found in a duffel bag under the driver's seat and two other guns were found near the accident scene, allegedly abandoned by the passengers in the defendant's car. Quintana was arrested and eventually charged with violating section 18–12–108, 8 C.R.S. (1978), Colorado's felon with a gun statute, which provides:

> Any person previously convicted of burglary, arson, or a felony involving the use of force or violence or the use of a deadly weapon, or attempt or conspiracy to commit such offenses, under the laws of the United States of America, the state of Colorado, or another state, within the ten years next preceding or within ten years of his release or escape from incarceration, whichever is greater, who possesses, uses, or carries upon his person a firearm or other weapon mentioned in section 18–1–901(3)(h) or sections 18–12–101 to 18–12–106 commits a class 5 felony. A second or subsequent offense under this section is a class 4 felony.

§ 18–12–108, 8 C.R.S. (1978).

Before trial, Quintana filed a motion to dismiss the charge, claiming that the prior conviction on which the present offense was based, a November 23, 1971, guilty plea to the crime of second-degree burglary, was invalid because it was obtained in violation of Crim.P. 11 and his constitutional right to be informed of the elements of the crime to which he pleaded guilty.[1] The district court ruled that the plea was invalid and therefore could not be used to impeach Quintana's credibility if he chose to testify.[2] However, the court denied the

defendant's motion to dismiss, citing *Lewis v. United States*, 445 U.S. 55, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980), as persuasive authority for its determination that an invalid plea of guilty can form the basis for a conviction under section 18–12–108. The jury thereafter found Quintana guilty of the present charge.

The defendant raises three issues on appeal: (1) Whether the trial court erred in denying his motion to dismiss once it found that the underlying conviction was obtained in violation of his constitutional rights. (2) Whether section 18–12–108 is unconstitutional because it creates an irrational distinction between felons whose convictions occurred more than 10 years ago, but whose release from prison occurred less than 10 years ago. (3) Whether the trial court erred in failing to instruct the jury that evidence of the defendant's prior conviction could be considered only for the purpose of determining his status as a previous offender. Because we hold that the trial court erred in denying the defendant's motion to dismiss, we need not address Quintana's other allegations of error.

## II.

In *People v. Kimble*, 692 P.2d 1142 (Colo. App.1984), *cert. granted on other issue*, 697 P.2d 716 (Colo.), *appeal dismissed*, 701 P.2d 17 (Colo.1985), the court of appeals interpreted section 18–12–108 to allow collateral attacks on the constitutionality of the underlying conviction. In *Kimble*, the court of appeals found that the Colorado felon with a gun statute paralleled the federal provision construed in *Lewis v. United States*, 445 U.S. 55, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980), but concluded that *Lewis* was inapplicable without analyzing whether the similarities in the two enactments justified adopting the federal interpretation. Notwithstanding *Kimble*, the

---

**1.** The defendant submitted a transcript of the 1971 providency hearing as evidence in support of his motion to dismiss. The transcript reveals that the trial court failed to advise Quintana of the elements of second-degree burglary as required by *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), and Crim.P.

11(c), C.R.S. 1963 (1970 Rev.). Thus, the plea resulted in an unconstitutionally obtained conviction.

**2.** The People have not challenged the trial court's determination that the plea was invalid.

People argue that *Lewis* is controlling in this case because there are no significant differences between the state and federal statutes. We, therefore, begin our analysis with *Lewis* and a comparison of the respective statutory schemes.

### A.

In *Lewis*, the petitioner was convicted of having knowingly received and possessed a firearm in violation of title VII of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. app. § 1202(a)(1) (1983), which provides in pertinent part:

> Any person who—
>
> (1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony,
>
> . . .
>
> . . . .
>
> and who receives, possesses, or transports in commerce or affecting commerce, after the date of enactment of this Act, any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both.

In 1961, Lewis was convicted in a Florida state court of a felony for breaking and entering with intent to commit a misdemeanor. He argued that his prior conviction was constitutionally flawed because his plea of guilty had been entered without the assistance of counsel and, therefore, it could not constitute a valid predicate felony for a subsequent conviction under section 1202(a)(1). The Supreme Court disagreed. Although noting the continuing validity of *Burgett v. Texas*, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967) (an uncounseled conviction cannot be used for enhancement of punishment); *United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972) (an unconstitutional conviction cannot be considered by the court in sentenc-

ing a defendant after a subsequent conviction); and *Loper v. Beto*, 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972) (an uncounseled conviction lacks reliability and therefore cannot be used to impeach the credibility of the defendant), the Court indicated that an unconstitutionally obtained conviction is not invalid for all purposes. *Lewis*, 445 U.S. at 66–67, 100 S.Ct. at 921. The Court analyzed the language of section 1202, the legislative history surrounding its passage, and the structure of titles IV and VII of the Omnibus Crime Control and Safe Streets Act of 1968,[3] and concluded that Congress intended the term "convicted" to be broadly construed so as to include both valid and invalid convictions. The Court determined that nothing on the face of the statute indicated that Congress intended the statute to be restrictively interpreted, while several factors suggested that Congress considered the validity of the underlying conviction to be irrelevant.

For example, the Court noted, sections 1202(c)(2) and 1203 enumerate exceptions to the prohibition of section 1202(a)(1), but no exception is made for a person whose prior conviction is invalid. *Lewis*, 445 U.S. at 61–62, 100 S.Ct. at 918–919. Moreover, in contrast to other federal statutes, title VII does not expressly permit a defendant to challenge, by way of defense, the validity of the predicate felony. *Id.* at 62, 100 S.Ct. at 919. Instead, the statute provides that the disability may be removed only by a qualifying executive pardon. § 1203(2).

Turning to the legislative history of section 1202(a)(1), the Court observed that title VII and its companion statute, title IV,[4] were "enacted in response to the precipitous rise in political assassinations, riots, and other violent crimes involving firearms, that occurred in this country in the 1960's."[5] *Lewis*, 445 U.S. at 63, 100 S.Ct.

---

**3.** *See* Omnibus Crime Control and Safe Streets Act of 1968, Pub.L. No. 90–351, 82 Stat. 197 (1968) (title VII codified as amended at 18 U.S.C. app. §§ 1201–1203 (1983); title IV codified as amended at 18 U.S.C. §§ 921–928 (1983)).

**4.** Title IV prohibits the unlicensed importing, manufacturing, dealing, shipping, transporting, receiving, and selling of certain firearms.

**5.** The Omnibus Act was passed on June 19, 1968, and was clearly designed to address a national crisis. President John F. Kennedy's assassination on November 22, 1963, was fol-

at 919. The Court characterized section 1202(a) as a "sweeping prophylaxis ... against misuse of firearms,"[6] and determined that the legislative history "affords no basis for a loophole, by way of a collateral constitutional challenge, to the broad statutory scheme enacted by Congress." *Id.* The Court noted that section 922(h) in title IV, which expands the prohibition against receipt of firearms to include persons under a felony indictment, reinforces its construction of the statute. The Court reasoned that if the fact of "mere indictment" is a disabling circumstance, *a fortiori,* the much more significant fact of conviction, regardless of its validity, must deprive the person of the right to possess a firearm. *Lewis,* 445 U.S. at 64, 100 S.Ct. at 920.

While the Supreme Court's analysis in *Lewis* may reasonably support its construction of section 1202(a)(1), it is clear that Colorado's felon with a gun statute is not based on the federal statute. The statute which preceded section 18–12–108 was passed by the General Assembly on April 27, 1963, more than five years before passage of the federal law. Ch. 107, sec. 1, § 40–11–11, 1963 Colo.Sess.Laws 312. The provision was repealed and reenacted in 1971, and amended in 1973 and 1975, but has undergone only minor substantive changes. Ch. 121, art. 12, § 40–12–108, 1971 Colo.Sess.Laws 388, 483; ch. 157, sec. 1, § 40–12–108, Colo.Sess.Laws 542 (amended 1973); ch. 167, sec. 17, § 18–12–108, 1975 Colo.Sess.Laws 616, 621. Moreover, an analysis of section 18–12–108 reveals none of the indices of legislative intent relied upon by the Supreme Court in *Lewis.*

Compared with the federal statutory scheme which applies to a wide range of persons, i.e., felons, veterans who did not receive honorable discharges, mental incompetents, illegal aliens, persons who have renounced United States citizenship, persons under indictment, fugitives from justice, and users of certain unlawful drugs,[7] the Colorado statute is narrowly drafted. Its application is explicitly limited by the nature of the previous offense and the time which has elapsed since the defendant's prior conviction or his release from prison. The broad and sweeping language in the federal statutes is not present in the state provision. Our statute differs from the federal law in other important respects: Nowhere in article 12 of title 18 has the legislature provided exceptions to section 18–12–108 or a method of seeking relief from its prohibitions. The existence of such statutory exceptions and specific and limited remedies in the federal scheme support the Supreme Court's conclusion in *Lewis* that if Congress had intended prior convictions to be subject to collateral attack, it would have so provided. Nothing in the Colorado statutory scheme permits this court to make a similar inference of legislative intent.

In addition, although there is a paucity of legislative history relating to section 18–12–108 or its predecessor, it is obvious that the United States Congress in 1968 was reacting to a national emergency that had not yet emerged when the Colorado legislature acted in 1963.

The variations between the federal and state statutory schemes persuade us that the Supreme Court's construction of section 1202 in *Lewis* is not dispositive of the question presented by this appeal. *Cf., People v. Howie,* 137 Cal.App.3d 258, 186 Cal.Rptr. 888 (1982) (When the determinative factors in *Lewis* are weighed against California's statute which prohibits convicted felons from possessing concealed firearms, the differences in the statutes are

---

lowed by the assassination of Dr. Martin Luther King, Jr. on April 4, 1968, and Senator Robert F. Kennedy on June 5, 1968. Annot., 13 A.L.R. Fed. 103 (1972).

**6.** The prohibitions of section 1202(a) also extend to any person who has received a discharge from the armed forces that was not honorable,

who has been adjudged mentally incompetent, who has renounced his United States citizenship, and aliens who are in this country illegally.

**7.** *See* 18 U.S.C. app. § 1202 (1983); 18 U.S.C. § 922 (1983).

striking and militate against adopting the *Lewis* rationale.); *State v. Gore*, 101 Wash.2d 481, 681 P.2d 227 (1984) (The Supreme Court's reasoning in *Lewis* is unpersuasive when applied to a state statute because the principle of lenity requires that the state provisions be interpreted to require a constitutionally valid predicate conviction.). We turn next to an independent analysis of the statute under Colorado case law.

### B.

■ Under section 18–12–108, the defendant's prior conviction is an element of the crime which the prosecution must prove beyond a reasonable doubt. *People v. Fullerton*, 186 Colo. 97, 525 P.2d 1166 (1974). We have held that the purpose of section 18–12–108 is to limit the possession of firearms by those who, by their past conduct as evidenced by a prior conviction, have demonstrated an unfitness to be entrusted with such dangerous instrumentalities. *People v. Gallegos*, 193 Colo. 108, 563 P.2d 937 (1977); *People v. Blue*, 190 Colo. 95, 544 P.2d 385 (1975).

■ We have also consistently adhered to the principle that an unconstitutionally obtained conviction cannot be used in a later criminal prosecution to establish guilt or enhance punishment. For example, in *People v. Roybal*, 618 P.2d 1121 (Colo.1980) (*Roybal I*), we held that a defendant charged with the felony offense of driving after judgment prohibited may attack the constitutional validity of uncounseled traffic offense convictions which establish the basis for the defendant's habitual traffic offender status. More recently, in *People v. Gandy*, 685 P.2d 165 (Colo.1984), we held that uncounseled prior traffic offense convictions which result in a license suspension by the Department of Revenue, Motor Vehicle Division may be the subject of a collateral attack in a prosecution for the misdemeanor offense of driving under suspension. *See also Watkins v. People*, 655 P.2d 834 (Colo.1982) (a prior conviction ob-

tained in violation of the defendant's constitutional right to be informed of the critical elements of the crime to which the plea is tendered is inadmissible in habitual criminal proceedings); *People v. Roybal*, 617 P.2d 800 (Colo.1980) (*Roybal II*).

These decisions provide analogous authority for our construction of section 18–12–108. In each case, the defendant's status as a previous offender provided the foundation for criminal sanctions in a subsequent prosecution.

■ Our holdings in *Gandy* and *Roybal I* were based on two considerations: First, in the absence of a clear expression of legislative intent permitting the use of unconstitutionally obtained convictions to support guilt in a later prosecution or to increase the penalty for subsequent criminal misconduct, the rule of lenity which requires that criminal statutes be construed in favor of the accused mandates that the defendant be allowed to collaterally challenge prior convictions. *Gandy*, 685 P.2d at 167; *Roybal I*, 618 P.2d at 1125–26; *see also People v. Lowe*, 660 P.2d 1261 (Colo. 1983). Second, a conviction obtained in violation of the defendant's constitutional rights "is not sufficiently reliable to support the severe sanction of deprivation of liberty." *Gandy*, 685 P.2d at 167 (quoting *Roybal I*, 618 P.2d at 1126).

■ Section 18–12–108 does not explicitly provide that a defendant may not attack the constitutionality of the underlying convictions upon which his status as a convicted felon is based. In addition, as discussed in part I.A. of this opinion, many of the indices of legislative intent cited by the Supreme Court to support its broad interpretation of the federal statute in *Lewis* do not exist in the state provision. Moreover, a valid underlying conviction is required if the purpose of the statute—to limit possession of firearms by persons, who, by virtue of their prior felony record, are likely to abuse the right to bear arms—is to be accomplished.[8]

---

8. In *People v. Velarde*, 657 P.2d 953 (Colo.1983), we construed section 18–8–208(3), 8 C.R.S.

(1978), the felony escape statute. We stated that the fundamental purpose of the statute is to

    Therefore, we hold that a prior conviction obtained in violation of a defendant's constitutional rights cannot be used as the underlying conviction in a prosecution under Colorado's felon with a gun statute. Accordingly, we reverse the defendant's conviction and remand this case to the district court with instructions to dismiss the charge against him.

prevent the evasion of the due course of justice, and suggested that even where a defendant may later be found not guilty of the underlying felony, his conviction for escape would be upheld. *See also People v. Rivera*, 37 Colo.App. 4, 542 P.2d 90 (1975); *People v. West*, 43 Colo.App. 246, 603 P.2d 967 (1979) (the purpose of section 18–8–204.1, 8 C.R.S. (1978), is to control contraband in penal institutions; therefore, the issue of whether the defendant's transfer to the penitentiary was effected in accordance with the

applicable statute was properly omitted from the jury instructions). *Accord People v. Hess*, 687 P.2d 443 (Colo.1984). The People argue that these cases dictate a result contrary to our holding today. We disagree. The possible consequences presented by the escape of a person being held under color of law in a penal institution are not implicated in the circumstances of this appeal. The defendant here is challenging his status as a previous offender. The People's argument is unpersuasive.