**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Jason M. LEE, Defendant–Appellant.**

**No. 98CA0546.**

Colorado Court of Appeals, Div. I.

Sept. 30, 1999.

Ken Salazar, Attorney General, Barbara McDonnell, Chief Deputy Attorney General, Michael E. McLachlan, Solicitor General, Kathleen M. Byrne, Special Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, Martin Gerra, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge DAVIDSON.

Defendant, Jason M. Lee, appeals from the judgment of conviction entered upon a jury verdict finding him guilty of second degree assault as a complicitor. He also challenges the sentence imposed. We affirm.

According to the prosecution's evidence, as the victim and his friends were leaving a party, they became involved in a fight with several boys, including defendant. At some point during the affray, defendant sat on the victim, holding him down, while another person kicked him, causing the victim to sustain head injuries resulting in brain damage.

Defendant testified that he noticed some kind of commotion, and the victim came running towards defendant and punched him in the face. In response, defendant tackled the victim. As they were rolling on the ground, another person came over and began kicking them both.

## I.

Defendant contends that the trial court abused its discretion in transferring jurisdiction of his case from juvenile court to district court. We disagree.

Transfer proceedings from juvenile court to district court are governed by a two-step process under what is now § 19–2–518, C.R.S.1999. A decision to transfer jurisdiction lies within the discretion of the juvenile court. *See People v. Armand,* 873 P.2d 7 (Colo.App.1993).

If the juvenile court makes findings as to the applicable factors and such findings have support in the record, the court's ruling on transfer is not an abuse of its discretion. *People v. Rivera,* 968 P.2d 1061 (Colo.App. 1997).

To transfer jurisdiction from juvenile court to district court, the trial court first

must determine whether there is "probable cause" to believe that the juvenile committed the offense for which the prosecution seeks a waiver of jurisdiction. *People v. Juvenile Court*, 813 P.2d 326 (Colo.1991); § 19–2–518(3)(a), C.R.S.1999. Defendant does not dispute the court's ruling of probable cause.

In the second step, the juvenile court must determine whether it would be contrary to the best interests of the juvenile or the public to retain jurisdiction over the child. Section 19–2–518(3)(b), C.R.S.1999.

In making this determination, the court is to consider certain factors, including:

1) the seriousness of the offense and whether the protection of the community requires isolation of the juvenile beyond that afforded by juvenile facilities;

2) whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner;

3) whether the alleged offense was against persons or property, greater weight being given to offenses against persons;

4) the maturity of the juvenile as determined by considerations of the juvenile's home, environment, emotional attitude, and pattern of living;

5) the record and previous history of the juvenile;

6) the likelihood of rehabilitation of the juvenile by use of facilities available to the juvenile court;

7) the interest of the community in the imposition of a punishment commensurate with the gravity of the offense;

8) the impact of the offense on the victim;

Section 19–2–518(4)(b), C.R.S.1999.

■ Here, the court, after a hearing, found that the offense with which defendant was charged was a serious offense, that it was committed against a person and not property, that the assault had had a large impact on the victim, and that it was done in an aggressive, violent, willful manner. The court further found that defendant was 17 at the time of the assault and that he had demonstrated mature behavior. Next, the court found that defendant had been involved with the law for over two years and that

there was evidence of his propensity to engage in assaultive behavior.

Because defendant was almost 19 at the time of the hearing, the court also found that the resources in the juvenile system would be somewhat limited for defendant, but that more services would be available to him in district court. Finally, the court found that the community had an interest in the imposition of punishment commensurate with the gravity of the offense and that, if he were convicted, the community would be served by defendant's punishment.

On the basis of these findings, the court determined that it would be in the best interest of both defendant and the community to transfer jurisdiction of defendant from the juvenile court to the district court.

Defendant argues that these findings place undue emphasis on the severity of the victim's injury and indicate the court's interest in transferring jurisdiction solely in order to punish defendant as an adult. In support of this argument, he points to the facts that the court ignored a probation department report recommending that the juvenile court retain jurisdiction, and that defendant was charged as a complicitor and had not been the person who actually inflicted the victim's injuries. Further, he argues, the transfer, in effect, punished him for demonstrating responsible behavior by working full-time and living independently. We are not persuaded.

■ Although a probation report may offer guidance to the trial court, it is not binding on the court. Moreover, the court found that the assault here was done in an "aggressive violent and willful" manner. Implicit in that finding is that defendant, as a complicitor, intended his conduct to aid in the commission of the assault and is held to the same level of culpability as the principal. *See People v. Mason*, 642 P.2d 8 (Colo.1982).

Further, the court, in noting that defendant had shown the capacity to be emancipated, did not indicate that such behavior, of itself, justified a transfer. Indeed, the court also acknowledged defendant's "shaky childhood."

Because the court considered the applicable factors and based its ruling on those

factors, without giving undue emphasis to any one factor, we perceive no abuse of discretion in the court's ruling.

## II.

Defendant next contends that the prosecutor's improper bolstering of certain witnesses and his emphasis on this testimony during closing argument violated his right to a fair trial. We do not agree.

### A.

■ Defendant did not object to most of the statements he now challenges, and therefore, we review those statements for plain error only. See *Wilson v. People*, 743 P.2d 415 (Colo.1987).

■ Three of the question and answer exchanges between the prosecutor and witnesses consisted of the prosecutor asking, in essence, if they took seriously their oath to testify truthfully and if they were telling the truth. The prosecutor did not ask these witnesses if other witnesses, defendant, or the victim were telling the truth. Such questioning, although of limited probative value, is not improper bolstering. See CRE 403 & 608.

■ Further, the jurors were instructed that they were to determine the credibility of the witnesses and the weight to give their testimony. Under these circumstances, defendant has not shown that his right to a fair trial was undermined, and thus, these statements do not constitute plain error. See *People v. Burgess*, 946 P.2d 565 (Colo.App. 1997).

■ The other statements which defendant characterizes as leading consisted of the prosecutor asking the witnesses if they remembered "specific details" of the incident. We do not perceive this questioning as unduly leading. Further, in light of the brain damage sustained by the victim who also was asked this question, we find this line of questioning to be proper in order to develop the evidence. See *People v. Raehal*, 971 P.2d 256 (Colo.App.1998) (it is permissible, under certain circumstances, to ask leading questions to develop and clarify a witness' testimony).

■ Defendant objected at trial to the final statement that he characterizes as improperly leading by the prosecutor. His objection was sustained and the prosecutor rephrased the question which survived further objection. The challenged question was: "Did [defendant] make any other comments to [witness] other than gang comments." We do not view this inquiry as improperly leading, but rather, as a question designed to elicit a general response as to admissions possibly made by defendant.

### B.

■ A contention that the prosecutor engaged in improper argument must be evaluated in the context of the argument as a whole and in light of the evidence. *People v. Marquantte*, 923 P.2d 180 (Colo.App.1995).

Defendant also did not object to the prosecutor's statements during closing argument, and thus, we review this contention for plain error also. *Wilson v. People, supra.*

■ During closing argument, the prosecutor stated that, when a witness was on the stand, "[H]e was very clear, 'I am telling the truth. I have a memory.' He has a memory of this, it's clear, and he was telling the truth."

Contrary to defendant's argument, the prosecutor was not stating his personal belief as to the witness' credibility, but was restating the witness' testimony that he had a memory of the incident. Viewed in the context of the closing argument, the prosecutor's statements do not constitute error, plain or otherwise. See *People v. Marquantte, supra.*

## III.

We also disagree with defendant's contention that the evidence was insufficient to support his conviction for second degree assault as a complicitor.

In considering a challenge to the sufficiency of the evidence, a reviewing court must determine whether the evidence, viewed as a whole and in a light most favorable to the prosecution, is sufficient to support the conclusion by a reasonable person

that the defendant is guilty of the offense charged beyond a reasonable doubt. *People v. Christian*, 632 P.2d 1031 (Colo.1981).

Viewing the evidence as a whole in a light most favorable to the prosecution, a reasonable jury could have concluded beyond a reasonable doubt that defendant sat on the victim with the intent of immobilizing him so that the other person could kick the victim in the head and about the body. This is sufficient to support the jury's finding that defendant did act with the intent of aiding the other person with the knowledge that he was committing an assault.

## IV.

Defendant contends that the trial court erred in imposing sentence. He argues that, because he was not charged separately with a crime of violence under § 16–11–309, C.R.S.1999, and because the jury was not required to make a special finding that he had committed a crime of violence, he was not convicted of a crime of violence, and therefore, the trial court erred in enhancing his sentence under § 18–1–105(9.7), C.R.S. 1999. Defendant also argues that, because the trial court erroneously believed he had been convicted of a crime of violence under § 16–11–309, the court erroneously determined that it had no discretion to impose a juvenile disposition.

Defendant relies on *People v. Banks*, 983 P.2d 102 (Colo.App.1999) (cert. granted September 13, 1999), in support of both arguments, asserting that the extraordinary risk provisions of § 18–1–105(9.7) do not apply unless a defendant has been charged with a crime of violence in a separate count and the jury has made the appropriate findings in support of the charge. Similarly, because defendant was not "convicted" of a crime of violence under § 16–11–309 as required, the provisions of § 19–2–518(1)(d)(I), C.R.S.1999, do not preclude the court from considering a juvenile disposition. We reject both contentions.

## A.

Section 18–1–105(9.7)(a), C.R.S.1999, provides that:

[C]ertain crimes ... present an extraordinary risk of harm to society and therefore, in the interest of public safety ... for such crimes which constitute class 4 felonies, the maximum sentence in the presumptive range shall be increased by two years....

Contrary to defendant's argument, under *Terry v. People*, 977 P.2d 145 (Colo.1999), decided after *People v. Banks, supra*, certain crimes of violence, expressly denominated under § 18–1–105(9.7)(b), C.R.S.1999, as extraordinary risk offenses, are considered per se crimes of violence and automatically are subject to the enhanced penalties under §§ 18–1–105(9) & 18–1–105(9.7), C.R.S.1999, without being separately charged or determined by a jury under § 16–11–309.

In *People v. Banks, supra*, a division of this court determined that, even though § 18–3–203(2)(c), C.R.S.1999, requires that a defendant convicted of an offense under § 18–3–203(1)(c), C.R.S.1999, be sentenced in accordance with § 16–11–309, the provisions of § 18–1–105(9.7) are not applicable unless the prosecution separately has charged and proved the existence of a crime of violence.

However, under *Terry v. People, supra*, because § 18–3–203(1)(c) expressly mandates sentencing under the violent crimes statute, such offenses are considered per se crimes of violence which are not subject to the procedural requirements of §§ 16–11–309(4) & 16–11–309(5), C.R.S.1999. Thus, to the extent that *People v. Banks, supra*, would require the prosecution separately to charge and prove a per se crime of violence before the sentencing provisions of § 18–1–105(9.7) apply, it has been implicitly overruled.

Here, similarly, defendant was convicted of second degree assault under § 18–3–203(1)(g), C.R.S.1999. Under § 18–3–203(2)(c) if a defendant is convicted of second degree assault under any one of several subsections of § 18–3–203(1), C.R.S.1999, including § 18–3–203(1)(g), then the court is required to impose sentence under § 16–11–309. This mandatory language designates these forms of second degree assault, including, as pertinent here, if a defendant, with intent to cause bodily injury to another per-

son, causes serious bodily injury to that person, as per se crimes of violence under § 18–1–105(9.7). *See Terry v. People, supra.*

Because defendant was convicted of a per se crime of violence, under § 16–11–309, the trial court was required to sentence him under the enhanced sentence provisions of § 18–1–105(9). For the same reason, defendant also was subject to an increase in the sentencing range under the extraordinary risk crime provisions of § 18–1–105(9.7). Accordingly, the prosecution was not required to charge a crime of violence separately and the jury was not required to determine its existence in order for the trial court to sentence defendant under the provisions of §§ 18–1–105(9) & (9.7).

## B.

Under § 19–2–518(1)(d)(I):

Whenever criminal charges are transferred to the district court . . . the judge of the district court shall have the power to make any disposition of the case that any juvenile court would have or to remand the case to the juvenile court for disposition at its discretion; except that a juvenile who is convicted of a crime of violence, as defined in section 16–11–309, C.R.S . . . . shall be sentenced pursuant to section 18–1–105, C.R.S.

Likewise, because § 18–2–203(1)(g) is considered a per se crime of violence under § 16–11–309, defendant's conviction for second degree assault under the statute is considered a conviction of a crime of violence. Thus, the trial court correctly determined that it had no discretion to impose a juvenile disposition but, rather, was required to impose sentence under §§ 18–1–105(9) & 18–1–105(9.7). *See Terry v. People, supra.*

The judgment and sentence are affirmed.

Judge METZGER and Judge CRISWELL concur.